IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michelle Rovenolt,                          :
                                            : No. 1351 C.D. 2016
                      Petitioner            : Submitted: November 18, 2016
                                            :
         v.                                 :
                                            :
Workers' Compensation Appeal                :
Board (Reliant Senior Care                  :
Holdings, Inc. and HM Casualty              :
Insurance Company),                         :
                                            :
                      Respondents           :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  March 2, 2017


         Michelle Rovenolt (Claimant) petitions for review of the July 7, 2016
order of the Workers' Compensation Appeal Board (Board), which affirmed the
order of a workers' compensation judge (WCJ) denying her claim petition.  We
affirm.

         Claimant filed a claim petition alleging that she suffered a work injury
on August 6, 2013, during the course of her employment as a licensed practical
nurse (LPN) with Reliant Senior Care Holdings, Inc. (Employer).  Employer filed a
timely answer denying those allegations and asserting, alternatively, that the claim
was barred by Claimant's violation of a positive work order.

Claimant testified by way of a February 2014 telephone deposition and again at a May 5, 2014 hearing before the WCJ. With respect to the work injury, Claimant stated that she was working in a lockdown unit on August 6, 2013, passing out medications, when she noticed a resident leave the activity room without an escort. She said she was redirecting the resident back to the room when he grabbed her left arm and threw her across the floor and into the wall, injuring her left shoulder and the left side of her neck and upper back. Claimant testified that she did not go to the emergency room, but filled out an incident report and saw Dr. Hynick, a panel physician, the next day. He restricted Claimant to light duty work, which she said involved a change in her duties as well as a significant reduction in days and hours she worked each week. Claimant worked light duty until Friday, August 30, 2013, when Dr. Hynick released her to return to her pre-injury position without restrictions.

According to Claimant, although she had been released to full duty, she started having problems with her shoulder. Claimant stated, for example, that she left the medication cart stationary because maneuvering it hurt her shoulder, and she asked aides to help her wrap patients' feet. Claimant explained that she did not complain of pain or report to her supervisor that she was self-modifying her duties because she was afraid of losing her job.

Claimant said that she was discharged following an incident with a coworker, which occurred after she asked the coworker to speak to a resident about her medication schedule and he refused. Employer suspended Claimant pending an investigation and then terminated her employment. Claimant testified that she subsequently worked as an LPN for about six weeks for a staffing agency, but was

only able to work a few days each week because of her shoulder pain. Reproduced Record (R.R.) at 120a-29a, 145a.

Claimant, who relocated to Tennessee, stated that she continues to treat with John A. Kline, M.D., for pain in her left shoulder.[1] She said she has a high tolerance for pain and takes no pain medicine, but she takes Celebrex and muscle relaxers as prescribed by Dr. Kline. Claimant stated that she has not seen any other doctor for her shoulder injury and that she sees Dr. Kline about twice a year. R.R. at 58a-63a.

Claimant testified that because she was not able to work, she lost her house and credit cards, and in November of 2013, she and her family moved to live with her mother in Tennessee. Claimant said she believes she is able to pass out pills, but the Department of Health requires that medications be delivered on a cart and she is not able to maneuver a cart up and down a hallway. R.R. at 64a-66a.

Claimant also presented the June 9, 2014 deposition testimony of Dr. Kline, who is board certified in physical medicine and rehabilitation, pain management, and disability impairment. Dr. Kline first saw Claimant on December 6, 2013, on referral of her counsel. Based on the history Claimant provided, a review of her medical records, and his physical examination, Dr. Kline diagnosed Claimant with left shoulder impingement syndrome with cervical and upper trapezius sprain/strain, and he restricted Claimant to light duty work. Dr. Kline testified that he saw Claimant again on April 11, 2014, and June 4, 2014. He stated that her condition was unchanged and he has not released Claimant to her pre-injury job. R.R. at 18a-23a.

---

[1] Claimant testified that she stopped treating with Dr. Hynick in October 2013 because he said there was nothing further he could do for her.

3

Zachary Schnee, who works for Employer as a night shift supervisor, testified that Claimant worked in a light duty capacity for a while after a work incident in early August 2013, and she was working full duty on the night of August 31, 2013. He stated that Claimant's coworker reported a disagreement with Claimant, and he brought both employees to his office to discuss the matter. Schnee described the coworker as soft spoken and said that Claimant was very loud. Schnee said that after the incident he "wrote Claimant up" for creating a hostile work environment and recommended that she be fired.

The WCJ found Claimant and Schnee to be credible with respect to the circumstances surrounding Claimant's discharge from her employment, noting that there was no significant variance in their accounts. The WCJ further found that the evidence did not establish that Claimant was fired for cause.

Although the WCJ found that Claimant was not discharged for cause, he determined that the primary issue was whether Claimant was performing her regular duty work when her employment was terminated. The WCJ rejected Dr. Kline's opinion that Claimant was only capable of light duty work, noting that he first saw Claimant months after her discharge from employment, on referral from her attorney. Additionally, the WCJ noted that even if Dr. Kline's limitations were accepted, the record did not establish that Claimant's normal work duties exceeded those restrictions. Notwithstanding Claimant's testimony to the contrary, the WCJ further found that Claimant was performing her pre-injury job when she was discharged. Based on these findings, and citing *Donahay v. Workers' Compensation Appeal Board (Skills of Central PA, Inc.)*, 109 A.3d 787 (Pa. Cmwlth. 2015), the WCJ concluded that Claimant did not meet her burden to prove

4

that her loss of earnings was caused by her work injury and denied her claim petition.[2]

Claimant appealed to the Board, arguing that the WCJ erred in concluding that she was ineligible for benefits after finding that she was not terminated for cause and crediting Dr. Kline's testimony that she was incapable of performing her pre-injury job. The Board affirmed, citing the WCJ's finding that Claimant was performing her regular duties when she was discharged and the WCJ's *rejection* of Dr. Kline's testimony as not credible.

On appeal to this Court,[3] Claimant argues that the WCJ erred in finding that Claimant was performing her pre-injury job duties when her employment terminated. In support, Claimant cites her unchallenged testimony that she was self-modifying her job duties and "the credible and unrefuted testimony from Dr. Kline" that Claimant was incapable of performing her regular duties without restrictions. Claimant's brief at 16.

In an original claim petition, a claimant bears the burden of proving all of the elements necessary to support an award of benefits, including the burden

---

[2] In *Donahay*, we held that benefits were properly suspended where the claimant returned to her pre-injury position with restrictions that did not preclude her from performing her regular work duties. We explained that under workers' compensation law, the term "disability" is synonymous with loss of earning power; if a claimant's reduction in earnings is not tied to a loss of earning power attributable to the work injury, no disability benefits are due. *Id.* at 793 (citing *Landmark Constructors, Inc. v. Workers' Compensation Appeal Board (Costello)*, 747 A.2d 850, 854 (Pa. 2000), and *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.)* 658 A.2d 766, 769 (Pa. 1995)).

[3] Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n.2 (Pa. Cmwlth. 2003).

5

to establish the duration and extent of disability. *Second Breath v. Workers' Compensation Appeal Board (Gurski)*, 799 A.2d 892, 899 (Pa. Cmwlth. 2002). Unfortunately, the evidence upon which Claimant relies to meet her burden was rejected by the WCJ.

It is a fundamental tenet of workers' compensation law that the WCJ has complete authority over questions of credibility, conflicting medical evidence, and evidentiary weight. *Sherrod v Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997). As the ultimate fact-finder, the WCJ's findings are binding on appeal if supported by substantial evidence. *Agresta v. Workers' Compensation Appeal Board (Borough of Mechanicsburg),* 850 A.2d 890, 893 (Pa. Cmwlth. 2004).[4]

Claimant acknowledges the WCJ's prerogative to determine witness credibility, but she contends that the WCJ capriciously disregarded her testimony and the "credible and un-refuted" testimony of Dr. Kline. We note that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002).

---

[4] "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion." *Mrs. Smith's Frozen Foods Co. v. Workmen's Compensation Appeal Board (Clouser),* 539 A.2d 11, 14 (Pa. Cmwlth. 1988).

Capricious disregard is a type of legal error. *Wintermyer*, 812 A.2d at 487. It is defined as a "deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Ward v. Workers' Compensation Appeal Board (City of Philadelphia)* 966 A.2d 1159, 1164 (Pa. Cmwlth. 2009) (quoting *Arena v. Packaging Systems Corp.*, 507 A.2d 18, 20 (Pa. 1986)).

Claimant appears to misapprehend this concept as circumscribing the WCJ's fact-finding authority. However, the law "remains well settled that the WCJ is the ultimate finder of fact and has exclusive province over questions of credibility and evidentiary weight. In making such determinations, the WCJ is at liberty to accept or reject the testimony of any witness, including a medical witness, in whole or in part. Moreover, a referee is not required to accept even uncontradicted testimony as true." *Newcomer Products v. Workers' Compensation Appeal Board (Irvin),* 826 A.2d 69 (Pa. Cmwlth. 2003) (citations omitted).

In *Capasso v. Workers' Compensation Appeal Board (RACS Associates)*, 851 A.2d 997 (Pa. Cmwlth. 2004), the claimant likewise asserted that the WCJ capriciously disregarded his testimony and that of his doctor. Rejecting that argument, we explained that "the WCJ did not ignore any of the evidence presented by [the claimant]. Rather, he chose not to believe it, and he explained his decision." *Id.* at 1002.

In this case, contrary to Claimant's characterization of the record, the WCJ found Dr. Kline's testimony *not* credible and explained his rationale for rejecting Dr. Kline's testimony. Additionally, the WCJ fully recounted Claimant's testimony that she modified her job duties, noting that it was not supported by other credible evidence. WCJ's Findings of Fact, Nos. 10-11. Consequently, the

7

WCJ's findings do not reflect a willful and deliberate disregard of evidence, but rather, the proper exercise of his discretionary decision-making authority.

Accordingly, we affirm.

<br>

_____
MICHAEL H. WOJCIK, Judge

<br>

Judge Brobson concurs in the result only.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michelle Rovenolt,            :
                                    : No. 1351 C.D. 2016
                Petitioner    :
                                      :
             v.                  :
                                      :
Workers' Compensation Appeal   :
Board (Reliant Senior Care        :
Holdings, Inc. and HM Casualty   :
Insurance Company),            :
                                      :
               Respondents  :

## O R D E R

AND NOW, this 2nd day of March, 2017, the order of the Workers' Compensation Appeal Board, dated July 7, 2016, is affirmed.

_____
MICHAEL H. WOJCIK, Judge