IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laura A. Goodz,      :
     Petitioner   :
          :
   v.      :
          :
County of Lancaster (Workers'  :
Compensation Appeal Board),  : No. 648 C.D. 2023
     Respondent : Submitted: May 7, 2024


BEFORE: HONORABLE ANNE E. COVEY, Judge
    HONORABLE ELLEN CEISLER, Judge
    HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY         FILED:  June 3, 2024

Laura A. Goodz (Claimant) petitions this Court, pro se, for review of the Workers' Compensation (WC) Appeal Board's (Board) May 18, 2023 order affirming WC Judge (WCJ) Carmen Lugo's (WCJ Lugo) decision that denied Claimant's petition for WC benefits (Claim Petition).  Essentially, Claimant presents one issue for this Court's review: whether the Board erred by affirming WCJ Lugo's credibility determinations.[1]  After review, this Court affirms.

Lancaster County (County/Employer) hired Claimant as a full-time Correctional Officer at the County Prison beginning October 26, 2020.  Claimant worked in D-Block, which was an isolation area for inmates with COVID-19, on November 20, December 6, and December 27, 2020, and January 1, and January 2,

---

[1] Specifically, Claimant states in her Statement of the Question(s) Involved: "I am questioning the reason why the [B]oard is not in the position to dispute the WCJ's determination. For this reason, I am asking to have the entire case reviewed." Claimant Br. at 5.  Thereafter, Claimant sets forth five questions purportedly demonstrating that the WCJ's credibility determinations should be overturned.  *See* Claimant Br. at 5.

2021. *See* Finding of Fact (FOF) 13; Supplemental Reproduced Record (S.R.R.) at 41a.[2] Claimant began to experience COVID-19 symptoms in January 2021, including fatigue and shortness of breath. She reported her concerns to Employer on January 8, 2021, after having worked a long shift and being asked to work mandatory overtime. Claimant related that she was ill and had hardly been able to finish her prior shift and asked to be excused from mandatory overtime. Employer sent her home and on January 11, 2021, Claimant went to Patient Care and tested positive for COVID-19. Claimant notified Employer on January 11, 2021, and spoke to Arla Brown in Human Resources concerning the same.

Employer issued a Notice of Compensation Denial on March 11, 2021. On March 15, 2021, Claimant filed the Claim Petition, therein alleging that she suffered a work-related injury on January 8, 2021, when she contracted COVID-19 pneumonia from her employment at the County Prison. Claimant sought temporary total disability as of January 14, 2021, and ongoing. On March 17, 2021, Employer filed a timely answer denying all allegations. WCJ David Weyl held video hearings on May 5, and August 19, 2021. WCJ Lugo held video hearings on January 14, and April 1, 2022. On October 26, 2022, WCJ Lugo denied Claimant's Claim Petition. Claimant appealed to the Board. On May 18, 2023, the Board affirmed WCJ Lugo's decision. Claimant appealed to this Court.[3]

---

[2] Employer should have included a lowercase b, rather than an a, after the page numbers of the S.R.R. *See* Pennsylvania Rule of Appellate Procedure 2132 ("[T]he pages of . . . any [S.R.R.] shall be numbered separately in Arabic figures. . . : thus 1, 2, 3, etc., . . . followed in any [S.R.R.] by a small b, thus 1b, 2b, 3b, etc."). However, because Employer used an a, this Court will also do so for the purpose of consistency.

[3] "[This Court's] review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated." *DiLaqua v. City of Phila. Fire Dep't (Workers' Comp. Appeal Bd.)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2021) (quoting *Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 595 n.6 (Pa. Cmwlth. 2019)).

Initially,

> "the WCJ is the ultimate fact[-]finder and is empowered to determine witness credibility and evidentiary weight. The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." [*Hershgordon v. Workers' Comp. Appeal Bd. (Pepboys, Manny, Moe & Jack)*, 14 A.3d 922, 928 (Pa. Cmwlth. 2011)] (quoting *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000)).

*Sadler v. Phila. Coca-Cola (Workers' Comp. Appeal Bd.)*, 269 A.3d 690, 716 (Pa. Cmwlth. 2022).

> Claimant argues:
>
> [**WCJ**] **Lugo's decision** on [her] case **is arbitrary and capricious because** [**WCJ Lugo**] **found Dr**. [**Michael**] **Silverman**[, **M.D**.]**'s** [(Dr. Silverman)] **testimony credible** and accepted it as fact, despite inconsistencies in his testimony, the fact that he based his opinion on inaccurate shopping history (per [Employer's] exhibits), inadequate contact tracing and testing history by the [County P]rison[,] and the fact that his time and main source of income was for paid medical depositions. [Claimant] also argue[s] that [**WCJ**] **Lugo's rejection of** [] [**George**] **Lieb**[, **M.D**.]**'s** [(Dr. Lieb)] **opinion on causation is also arbitrary and capricious** because Dr. Lieb is a very successful medical practitioner, who treated [Claimant] for many months, and actually treated well over 80 patients weekly (including COVID[-19] patients).

Claimant Br. at 9 (emphasis added).

> While many petitioners challenging an adverse credibility determination would suggest that we review each and every component of the WCJ's reasoning for substantial evidence and reverse or remand if we can find any flaw, we do not believe the reasoned decision requirement takes us so far from the traditional notions of the deference owed credibility determinations. Indeed, . . . in *PEC Contracting Engineers v. Workers*[*'*] *Comp*[*ensation*]

*Appeal* [*Board*] *(Hutchison)*, 717 A.2d 1086 (Pa. Cmwlth. 1998), [this Court] stated:

> The requirement that the WCJ adequately explain his reasons for accepting or rejecting evidence protects the parties to a decision by ensuring that a legally erroneous basis for a finding will not lie undiscovered. For instance, if a WCJ rejects evidence based on an erroneous conclusion that testimony is equivocal, or that the evidence is hearsay or for some other reason incompetent, such legal error will be evident and can be corrected on appeal.
>
> However, **the WCJ's prerogative to determine the credibility of witnesses and the weight to be accorded evidence has not been diminished** by the amendments to Section 422(a) [of the WC Act].[4] **Such determinations are binding on appeal unless made arbitrarily and capriciously**. *Ryan v. Work*[*man's*] *Comp*[.] *Appeal* [*Bd.*] ([*Cmty.*] *Health* [*Servs.*]), . . . 707 A.2d 1130 ([Pa.] 1998).
>
> . . . .

> *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14, 18-19 (Pa. Cmwlth. 2008) (emphasis added) [(quoting *PEC Contracting Eng'rs.*, 717 A.2d at 1088-89)].

*Lawry v. Cnty. of Butler (Workers' Comp. Appeal Bd.)*, 310 A.3d 1286, 1289-90 (Pa. Cmwlth. 2024) (footnote omitted).

Here, WCJ Lugo explained:

20. The evidence establishe[d] [] Claimant tested positive for COVID[-19] on January 11, 2021[,] and thereafter developed COVID[-19] pneumonitis with evidence of shortness of breath with hypoxia (low oxygen). Both medical experts agree on the diagnosis. Both medical experts also agree [] Claimant, at this time, cannot perform the duties of her regular job as a corrections officer. The

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

4

issue for [WCJ Lugo] to decide is whether [] Claimant was exposed to and became infected with COVID[-19] from an exposure at work.

. . . .

22. [] Claimant maintains that the only place she was exposed to COVID[-19] was at work because she worked in D-Block where they housed people with COVID[-19]. D-Block did house people who tested positive for COVID[-19], as well as people who were suspected of having COVID[-19] or were exposed to someone with COVID[-19]. [] Employer's records indicate that during the possible period of incubation in this case (December 23, 2020-January 5, 2021), only one inmate tested positive for COVID[-19] on December 8, 2020, which was well before [] Claimant's possible exposure period based on her January 11, 2021 positive test date. [] Claimant's medical expert, Dr. Lieb, opined that [] Claimant's exposure was at work because during the COVID[-19] crisis, infections were more prevalent in institutions such as prisons and nursing homes, and in his opinion [] Claimant was not able to socially distance herself at the [County P]rison and[,] thus[,] was exposed to inmates who were without masks. However, the evidence presented by [] Claimant did not establish an exposure. Although she worked as a prison guard in D[-]Block, at the time when the exposure could have occurred, there was only one inmate who had tested positive on December 8, 2020, 19 days before [] Claimant worked in D-Block [on] December 27, 2020. [] Claimant also argues she was exposed to a trainer who also had COVID[-19] around the same time she did (the trainer was diagnosed January 4 or 5, 2021); however, [] Claimant last trained with her on December 13, 2020[,] and did not work the same shift as the trainer after December 13, 2020. [] Claimant testified that she was exposed, after her training period, to other co-workers in the break rooms, pods, line-ups and throughout a shift. However, she did not testify to a direct, specific exposure[,] nor did she provide evidence [that] any of those individuals had COVID[-19]. [] Claimant testified that other than work, grocery shopping and visiting her mother[,] she did not go anywhere she could have been exposed to COVID[-19]; however, [Claimant's] banking statement reveals she did more than just shop for groceries. [Claimant] visited many

5

other public stores, such as Target, Walmart, Home Depot, Hobby Lobby, Staples, and Best Buy.

S.R.R. at 30a-31a.

WCJ Lugo described her reasons for accepting Dr. Silverman's testimony and rejecting Dr. Lieb's testimony. Specifically, relative to Dr. Silverman, WCJ Lugo opined:

> Even though Dr. Silverman could not opine where the Claimant contracted COVID[-19], his opinion on exposure and causation are found to be credible and are accepted as fact. Dr. Silverman opined that the likely exposure window for [] Claimant, who was diagnosed with COVID[-19] on January 11, 2021[,] but began to experience symptoms January 8, 2021, would be December 23, 202[0] through January 5, 202[1,] based on an incubation period of [2] to [14] days. Therefore, he opined that [Claimant] could not have been exposed to COVID[-19] from the trainer who [Claimant] last worked with [on] December 13, 2020[,] or from the inmate who was diagnosed December 8, 2020.

S.R.R. at 31a-32a.

> Concerning Dr. Lieb's testimony, WCJ Lugo explained:
>
> Claimant has not established that she contracted COVID[-19] from an exposure at work. Dr. Lieb's opinion on causation is rejected. He relied on his belief that [] Claimant was exposed to an inmate or trainer who had COVID[-19]; however, [] Claimant did not prove an exposure during the relevant time. He also based his opinion on a belief that there was a higher chance that she was exposed to COVID[-19] at the [County P]rison than in the general community because infections were more prevalent in prisons. Yet again, [] Claimant did not prove an exposure to COVID[-19] at work during the relevant time (incubation time December 23, 2020 to January 5, 2021).

S.R.R. at 31a.

> [T]he arbitrary and capricious standard cited in *PEC Contracting Engineers* is not only the traditional standard

6

applied to credibility determinations, but is strikingly similar in substance to the prohibition in Section 422(a) [of the WC Act] of rejecting evidence for reasons that are irrational. These concepts provide an appropriate paradigm for our analysis. Credibility determinations are more than a series of individual findings. Rather, they represent the evaluation of a total package of testimony in the context of the record as a whole, and reflect subtle nuances of reasoning that may not be fully articulated, nor even fully appreciated, by the fact-finder. Accordingly, we believe that, even where a WCJ has based a credibility determination on a cold record, substantial deference is due. We must view the reasoning as a whole and overturn the credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational.

*Lawry*, 310 A.3d at 1291-92 (emphasis omitted) (quoting *Casne*, 962 A.2d at 19 (emphasis added; footnote omitted)). This Court cannot hold that WCJ Lugo's credibility determinations of Drs. Silverman and Lieb were arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render them irrational. Accordingly, the Board did not err by affirming WCJ Lugo's credibility determinations.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

7

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laura A. Goodz,                 :
               Petitioner      :
                                   :
           v.                   :
                                   :
County of Lancaster (Workers'      :
Compensation Appeal Board),       :    No. 648 C.D. 2023
               Respondent    :

## O R D E R

AND NOW, this 3rd day of June, 2024, the Workers' Compensation Appeal Board's May 18, 2023 order is affirmed.

 

_____
ANNE E. COVEY, Judge